A. A. CROMARTIE v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 27 September, 1911.)

1. Appeal and Error—Continuance—Discretion, Abuse of.

   Having continued the case for defendant at a former term, for the sickness and absence of a witness, under condition that defendant would take his depositions and that the cause would peremptorily be tried on a certain day of a subsequent term, the refusal to again continue the case for defendant was in the

discretion of the trial judge, and the fact that the depositions had not been taken owing to the temporary recovery of the witness, and his absence was unexpectedly caused by his relapse, is not a gross abuse of this discretion.

**2. Evidence—Negligence—Proximate Cause—Questions for Jury.**

The plaintiff, a brakeman on defendant's train, got upon the pilot of the engine, according to a known custom, upon entering a freight yard at a station, for the purpose of opening switches for the train, with the knowledge of the engineer operating the train. In this yard there were several switches to be thrown open, some distance apart. Plaintiff was standing in the foothold of the pilot made for the purpose, holding by his hands to a rod of iron crossing the pilot at the top, his back to the front and looking towards the cab windows of the engineer and fireman, to give signals by hand-waving. The engine front shut off the view of the engineer, and the fireman was not in his window. While thus situated the V-shaped pilot plowed through a pile of cinders or something on the track, knocking plaintiff's foot off the foothold onto the track between the rails, and throwing his weight upon the bar to which he was holding. This bar gave way, and plaintiff caught the lift-lever to prevent his further slipping, and while in this condition, screaming for help, the pilot pushed his foot onto the rails, causing the injury complained of. The train could have been stopped, at the speed it was going, almost instantly: *Held,* the failure of the engineer to be on lookout and to stop the train upon hearing the unusual commotion (he testified that he took plaintiff's screams for a woman laughing), together with the other circumstances of the case, was sufficient evidence to go to the jury upon the questions of defendant's negligence and its proximate cause of the injury.

APPEAL from *Ferguson, J.,* at April Term, 1911, of PITT.

Civil action to recover damages for personal injury. These issues were submitted:

1. Was plaintiff injured by the negligence of defendant company, as alleged? Answer: Yes.

2. Did the plaintiff by his own negligence contribute to his injury? Answer: No.

3. Notwithstanding plaintiff's negligence, could the defendant company by the exercise of reasonable care have avoided said injury? Answer: Yes.

4. What damage, if any, is plaintiff entitled to recover? Answer: $6,300.

From the judgment the defendant appealed.

*Ward & Grimes and Julius Brown for plaintiff.*
*Harry Skinner for defendant.*

BROWN, J.   The defendant excepts to the refusal of the court to continue the case on account of the absence of two of the defendant's witnesses, claiming that the refusal in this instance amounts to a gross abuse of discretion.

The facts stated in the record acquit his Honor of any abuse of the discretion vested in him.   They are as follows:   On 1 May, 1911, when this case was called for trial, defendant stated that it could not go to trial.   The reasons assigned, that at the former term this case was continued by consent, owing to the fact that a witness under subpœna for the defendant company (W. D. Medley, engineer) was then sick.   The court, after hearing affidavits and telegrams connected with Engineer Medley's condition, stated that it would continue the case, but that it would fix Monday, 1 May, peremptorily, for the case to be called for trial, and in the meantime gave permission that depositions necessary should be taken.

On the day before the day appointed for taking the deposition attorney for defendant received telegrams that Medley was then up and out, and that his physicians stated that he would be able to attend court on Monday, 1 May.   Under these conditions and circumstances, with the consent of plaintiff's counsel, the taking of the depositions was called off.

On Saturday, 29 April, attorney for defendant received telegrams saying that Medley had had a relapse, and would not be able to attend court at Greenville on 1 May.   On receipt of these telegrams counsel for defendant informed counsel for plaintiff of their contents and notified them that, although it was irregular, they would take the deposition of W. D. Medley, engineer, on the night of 29 April, at Rocky Mount, unless they would agree to continue the case.   Counsel for plaintiff refused either to continue the case or to take the deposition.   Therefore, counsel for defendant notified counsel for plaintiff that he would

CROMARTIE v. R. R.

take a statement from Engineer Medley on Saturday night, 29 April, and would use it as a basis for continuance on the calling of the case on 1 May, and on this being refused, would ask that the statements contained therein be admitted in evidence on affidavit. When the case was called on Monday, 1 May, these statements were made in open court and not disputed.

The court held that it would not continue the case, as defendant should have taken the deposition in regular order, but would permit the written statement made by Medley to be read to the jury as the testimony of Medley as if he were present.

In this there is nothing indicating any abuse of discretion. The defendant had opportunity to take the depositions, but failed to do so. Nevertheless, Medley's *ex parte* statement was read to the jury and is set out in the record. We think his Honor was very liberal in his treatment of the defendant under the circumstances.

It is well settled that a motion for continuance is addressed to the sound discretion of the presiding judge. The exercise of such discretion is not reviewable except in a case where it is grossly abused. *Lanier v. Insurance Co.,* 142 N. C., 15.

A motion to nonsuit was made, overruled, and exception duly taken, and is the first assignment of error discussed at length in the brief of the learned counsel for defendant.

The plaintiff's evidence tended to prove that plaintiff was a brakeman on defendant's train. On 5 April, 1909, he was on duty on a freight running from Rocky Mount to Florence. His duties were opening and closing switches and shunting off cars. The train on this day went into the yards at Florence about 5:40 o'clock P. M. These yards contained many switches. As the train approached the yards plaintiff got on the pilot to open the main-line switch, and rode on it into the yards. There were four or five switches to open and close; after throwing a switch, the train continuing to run on. The next switch, fifty or one hundred yards away, was on the opposite side of the train to that of the one last thrown. Plaintiff crossed over the pilot in front to get over to the other side to throw the switch. He got safely over and was standing in the foothold made for the purpose of standing in it, on the front and bottom of the

pilot, nine inches wide and four or five inches high, holding by his hands to a rod of iron which crosses the pilot at the top, his back to the front and looking toward the cab windows of the engineman and fireman, to give signals by hand-waving. While so standing, the pilot plowed through a pile of cinders or something piled on the track. The pilot is V-shape. The substance on the track knocked plaintiff's foot off the foothold upon the track between the rails. As he fell plaintiff threw his weight upon the iron rod. This gave way, plaintiff slipping by his weight toward the side of the pilot five or six inches. Plaintiff held on to the lift-lever, his heel on ground between rails. The beam on the pilot pressing on his instep pushed plaintiff's heel across the ties and on the track backwards. Plaintiff testified that he held firmly to lift-lever unable to extricate his foot dragging on rail; that all the time he was screaming for help as loud as possible and looking at fireman's window. That the fireman was not in his window and the engineer was at the throttle. Plaintiff testifies that he knew there was a switch and frog just ahead and that it would hold his foot, break his hold, and pull him backwards before the moving train. He held on for some forty yards and then turned loose and fell, and the wheels crushed his foot and ankle. Plaintiff testifies that at speed engine was going it could have been stopped "almost instantly." Plaintiff had been riding on the pilot in this way to throw switches during his entire employment, nearly three years. The trainmasters, conductors, and engineers had known of his riding there and had directed him to do so. The conductor of that particular train had ridden by his side on same pilot going into the same yards. The engineer, Medley, testifies that he knew that plaintiff was on the pilot for purpose of changing switches, and further, that he heard the hollering, but thought it was a woman laughing, but he did not stop his engine.

We will not discuss the many assignments of error presented in the record and discussed in the brief. In our view, there is sufficient evidence to support the findings of the jury upon the first and third issues, which renders it unnecessary to consider the defense of contributory negligence so earnestly discussed by counsel.

The evidence shows that it was a very common custom for brakemen to ride on the pilots of engines in order more expeditiously to change switches in the defendant's yards. In this case the evidence is abundant that plaintiff had done so constantly for years with the knowledge and by direction of his superiors. But assuming, for argument's sake, that he had violated a rule of the company, that does not necessarily bar recovery. *Thomas v. R. R.*, 129 N. C., 392; *Biles v. R. R.*, 139 N. C., 528. The plaintiff was actually on the pilot with the knowledge of the engineer and conductor for the purpose of opening the switches.

Under such conditions it was the peculiar duty of the engineer to keep a careful lookout for the brakeman, so as to protect him from injury if possible. He knew the brakeman was on the opposite side of pilot and he could not see him from the window at the throttle. He heard the hollering or screaming of plaintiff, but thought it was a "woman laughing." There is no evidence that there was a woman anywhere in the neighborhood. Knowing plaintiff's dangerous position and hearing the unusual and extraordinary sounds in front of his engine, it was the plain duty of the engineer to resolve all doubts in favor of human life and stop his engine at once.

The engineer says he was running three and one-half miles per hour. There is evidence that he could have stopped almost instantly; that plaintiff was dragged forty yards, "screaming at top of his voice all the time."

This evidence is scarcely controverted and fully justifies the conclusion that the injury was occasioned by the negligence of defendant's servant, and that such negligence was the immediate or proximate cause of plaintiff's injury.

This view of the case renders it unnecessary to discuss other assignments of error of the defendant or other phases of the evidence of negligence presented by plaintiff's counsel. The motion for new trial on account of newly discovered evidence is denied.

No error.